UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VINCENT E. ROPER, <br><br> Petitioner, <br><br> v. <br><br> TIMOTHY WENGLER, <br><br> Respondent. | Case No. C08-5049BHS/JKA <br><br> REPORT AND RECOMMENDATION <br><br> **NOTED FOR:** <br> **JULY 11, 2008** |

This habeas corpus action, filed pursuant to 28 U. S.C. 2254, has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrates' Rules MJR 3 and MJR 4. Respondent has answered the petition (Dkt # 14). Petitioner did not file a traverse. This matter is ripe for review. Having reviewed the petition, the answer, and the remainder of the file, the court concludes that this petition is unexhausted and procedurally barred. The petition should be **DENIED** and **DISMISSED WITH PREJUDICE.**

BASIS FOR CUSTODY AND FACTS

Petitioner is in custody pursuant to Pierce County convictions for first degree kidnapping,

REPORT AND RECOMMENDATION- 1

1  two counts of first degree rape, and one count of third degree rape.  Petitioner was sentenced to

2  thirteen years four months with a consecutive sentence of ten years three months for a total period

3  of confinement of twenty-three years seven months.  His earliest possible release date is December

4  20, 2023, (Dkt # 15, Exhibits 1 and 2).

5  The Washington State Court of Appeals summarized the facts of this case as follows:

> On May 18, 2002, Sonia Stead met Vincent Edward Roper and Jason Michael Smith at a friend's apartment. While at the apartment, Smith and Stead consumed alcohol. Between 10 p.m. and 11 p.m., the hostess told everyone to leave because the gathering was getting too loud. Stead was confrontational and yelling when she was told to leave.
>
> Stead accepted Smith's offer to drive her home. Roper had already left to walk home, but he called Smith to ask for a ride when he realized he was still several miles from his residence. Smith then drove Stead to Fort Lewis to pick up Roper, but Roper refused to get into the car when he noticed an open container of alcohol in the car. An argument ensued, during which Smith hit Stead in the face, and both Roper and Smith kicked her. Stead "curled up in a ball" on ground to protect herself. Report of Proceedings (RP) at 240. Roper and Smith then drove away and left Stead on the side of the road.
>
> Stead testified that she tried to find help at nearby buildings, but they were vacant, and her cell phone was dead. After a few minutes, Roper and Smith came back and "grabbed" Stead and "stuffed" her into the car. RP at 242. While Roper drove, Smith got into the back seat with Stead and he removed her shirt and bra. Smith also took her cell phone, keys, credit cards and identification. Roper drove off base toward Tillicum.
>
> Smith told Stead to perform oral sex on him. Stead testified that she "didn't want to do it, but then it became more physical, like, 'Okay. You're going to do it or else.'" RP at 253. Roper stated that he observed Smith and Stead engage in vaginal sex during the drive to Tillicum. Stead testified that Roper and Smith passed her back and forth, and forced her to perform oral sex "at least ten" times through the evening. RP at 262.
>
> Roper parked the car in a secluded area of Tillicum and all three exited the car. Stead performed oral sex on Roper. Smith then vaginally raped, and attempted to anally rape Stead. She did not try to get away because she felt that she would put herself in even more physical danger.
>
> Roper then drove to Tacoma while Smith forced Stead to again engage in oral and vaginal sex in the back seat of the car. When she was not performing sexual acts, Roper and Smith required Stead to cover her face with her jacket so she could not be seen and so she could not see where they were going.
>
> Smith telephoned his friend, Sharon Commandest, and told her [he] had "really fucked up" and that he was "going to go to prison." RP at 445. Commandest told Smith that they could come to her house. At Commandest's home, Commandest got into the back seat of the car with Smith. Commandest noticed a shirt, bra, ID

REPORT AND RECOMMENDATION- 2

card, and some keys on the floor of the car. Stead was in the front seat with Roper. Commandest testified that she could not get a good look at Stead because Stead had a jacket hood on and she was leaning against the passenger door.

The foursome then drove to a store for beer. While Roper was driving, Commandest heard him tell Stead to "suck [his] dick." RP at 451. Stead told Roper that she did not want to, but Roper replied, "No, you're going to." RP at 452. Commandest also heard Smith "command" Stead not to "speak unless spoken to." RP at 456.

When they returned to Commandest's house, she helped Stead out of the car because she could not get out on her own. Once they were inside the house, Roper told Stead to suck his dick, but Commandest interjected and said, "None of that nasty shit is going on in my house." RP at 462. Commandest also noticed that Smith had blood on his shirt and he did not know if it was Stead's or his but he had Commandest's roommate, Falisity Hughley, wash the shirt.

Hughley testified that Stead appeared scared, looked like she had been beaten up, and was wearing only a coat and pants. Hughely heard Smith tell Stead, "Don't say nothing, don't talk." RP at 411. She also testified that Smith asked her to beat up Stead, and that Smith said he wanted to kill Stead. Commandest heard Roper ask Stead, "You want me to give you another bloody nose?" RP at 462. At some point, Stead was offered the use of the telephone in the living room, but Stead refused because "[s]he was scared." RP at 425.

Smith and Commandest eventually took Roper home and left Stead at the house with Hughley. On the way to Roper's home, Roper, Smith, and Commandest stopped at a Motel 6 and threw Stead's belongings from the car into a dumpster. Meanwhile, Stead fell asleep at Commandest's house.

The next morning, Hughley offered Stead the use of a telephone, and Stead called her boyfriend, Noel Blades, who picked her up near Commandest's house. Blades took Stead to a hospital for a rape exam, which Janice Wick conducted. Wick testified that Stead told her two men, "Vince and Jay," had offered her a ride home and the drove her around demanding sexual acts, including oral sex, vaginal intercourse, and attempted anal intercourse. RP at 385. DNA testing indicated that semen found in Stead's vagina and anus belonged to Smith.

The jury convicted Smith of first degree kidnapping, two counts of first degree rape, and one count of first degree attempted rape. The jury convicted Roper of first degree kidnapping, two counts of first degree rape, and one count of third degree rape. The jury also returned a special verdict indicating that the rapes were committed during the course of a kidnapping.

(Dkt. # 15, Exhibit 3, pages 2-5).

## PROCEDURAL HISTORY

Petitioner does not contest Respondent's recitation of the procedural history of this petition and the Court adopts the Respondent's statement of procedural history:

Roper was tried along with his co-defendant, Jason Smith. Through counsel,

REPORT AND RECOMMENDATION- 3

> Roper appealed to the Washington Court of Appeals. Exhibit 4, Brief of Appellant. Mr. Smith, through different counsel, also appealed. Exhibit 5, Brief of Appellant Smith. After the opening briefs of both appellants had been filed, but before the Court of Appeals had issued an opinion, the United States Supreme Court issued its decision in the case of <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). Mr. Smith's counsel filed a motion to file supplemental briefing in order to address the impact of <u>Blakely</u> on Mr. Smith's sentence. Exhibit 6, Motion for Additional Argument and Briefing on Exceptional Sentences. The Court of Appeals granted that motion and accepted the supplemental briefing from Mr. Smith. Exhibit 7, Letter; Exhibit 8, Supplemental Brief of Appellant Smith. In his supplemental briefing, Mr. Smith argued that the court improperly imposed an exceptional sentence upon him, in violation of <u>Blakely</u>, when it imposed an additional 37 months on Mr. Smith so that his sentence would be the same as Roper's. Exhibit 8. **Roper did not file supplemental briefing.**
>
> The Court of Appeals consolidated the appeals of Roper and Mr. Smith. Exhibit 3. The court denied Roper's appeal in an unpublished decision. Exhibit 3. In that same decision, the court remanded Mr. Smith for resentencing consistent with <u>Blakely</u>. Exhibit 3. The court also denied Roper's motion for reconsideration. Exhibit 9, Motion for Reconsideration and To Join Defendant Smith's Motion; Exhibit 10, Order Denying Motion to Reconsider.
>
> Roper petitioned for review in the state's highest court. Exhibit 11, Petition for Review. Roper's petition for review presented the following single issue to the Washington Supreme Court:
>
>> The Court's imposition of consecutive sentences without a finding by the jury that the offenses were not the same criminal conduct violates Roper's Federal Sixth Amendment rights and Washington Const. art. 1, Section 22 rights.
>
> The Washington Supreme Court denied Roper's petitioner for review without comment on March 7, 2007. Exhibit 12, Order. The Court of Appeals issued its Mandate on June 4, 2007. Exhibit 13, Mandate. Roper did not file a post-conviction, collateral challenge in state court. <u>See</u> Petition of Roper at 4.

(Dkt. # 14, pages 5and 5 (footnotes omitted)(emphasis added)).

Petitioner filed the Habeas corpus petition that is now before this court. Petitioner raises the following grounds for relief:

1. The conviction on multiple counts of first degree rape was obtained by insufficient evidence;

2. The conviction of kidnapping was obtained by insufficient evidence;

3. The judge erred in ruling that counts III and IV encompassed the same criminal conduct and in imposing consecutive sentences;

4. The judge erred by excluding evidence that the victim had a domestic violence conviction;

REPORT AND RECOMMENDATION- 4

5. The judge erred by not requiring the prosecution to produce information related to the victim's domestic violence conviction;

6. The judge erred by admitting statements under the medical diagnosis to hearsay rule;

7. Cumulative errors denied Roper a fair trial;

8. The guilty verdicts are irreconcilably inconsistent;

9. The jury erred by not convicting Roper of a lesser included offense;

10. The State lacked jurisdiction over crimes committed in exclusively federal jurisdiction;

11. Defendant Roper received ineffective assistance of counsel.

(Dkt. # 14, pages 5 and 6) See also, (Dkt. # 5 Pages 5 to 21).

Respondent argues the petition is unexhausted. Rather than seeking the petition be dismissed without prejudice, the respondent argues the petition should be dismissed with prejudice (Dkt # 14, page 14). After reviewing the date petitioner's motion for discretionary review was denied by the Washington State Supreme Court, (Dkt. # 15, Exhibit 12), the court concludes that any attempt to return to state court or file a collateral challenge would be barred by Washington's one year statute of limitation on collateral challenges, RCW 10.73.090. Thus, this action is procedurally barred. The petition should be **DENIED** and **DISMISSED WITH PREJUDICE**.

## EVIDENTIARY HEARING

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996). Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational

REPORT AND RECOMMENDATION- 5

fact finder would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing.

## STANDARD

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law. Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## DISCUSSION

A.   Exhaustion of State Remedies.

In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly presented to the state's highest court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985). A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of prisoners' federal rights. Duncan v. Henry, 513 U.S.364 (1995). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. Id, *citing* Picard v. Connor, 404 U.S. 270 (1971) and Anderson v. Harless, 459 U.S. 4 (1982). The claims in this

REPORT AND RECOMMENDATION- 6

petition are unexhausted.  The only claim presented to the Washington State Supreme Court was that "[t]he Court's imposition of consecutive sentences without a finding **by the jury** that the offenses were not the same criminal conduct violates Roper's Federal Sixth Amendment rights and Washington Const. art. 1, Section 22 rights."  (Dkt. # 11, page 1)(emphasis added).  Thus, petitioner changed his third issue from a challenge to a judge's ruling to a <u>Blakely</u> issue. Petitioner did not raise any <u>Blakely</u> issue in the Washington State Court of Appeals.

Respondent contends this claim was not presented to the Washington State Court of Appeals on direct review.  Review of the brief on direct appeal supports respondent's contention, although the third claim is similar it is not posed as a challenge to the lack of jury findings.  A federal court faced with an unexhausted petition ordinarily dismisses the petition, without prejudice, so that the petitioner has an opportunity to exhaust the claims in state court.  <u>Rose v, Lundy</u>, 455 U.S. 509, 522 (1982).

B.    <u>Procedural Bar</u>.

Normally, a federal court faced with an unexhausted or mixed petition dismisses the petition without prejudice, so that the petitioner has an opportunity to exhaust the claims in state court. Now, however, petitioner is barred from filing another petition in state court as any attempt to file another petition will be deemed time barred. <u>See</u>, RCW 10.73.090.

Petitioners direct appeal became final for Habeas Corpus purposes on March 7, 2007, (Dkt # 14, Exhibit 12, Order Denying Discretionary Review).  Petitioner would have had until March 8, 2008, to file a collateral challenge.

Federal Courts generally honor state procedural bars unless it would result in a "fundamental miscarriage of justice," or petitioner demonstrates cause and prejudice.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).  Petitioner here cannot show cause and prejudice in state court.

To show cause in federal court, petitioner must show that some objective factor, external to the defense, prevented petitioner from complying with state procedural rules relating to the presentation of his claims. <u>McCleskey v. Zant</u>, 499 U.S. 467, 493-94 (1991). Here, petitioner simply failed to file a collateral challenge in a timely manner.  He is now barred from filing a personal

REPORT AND RECOMMENDATION- 7

1  restraint petition. Petitioner cannot show cause that excuses his procedural default in state court.

2  Accordingly, this petition is procedurally barred and should be **DENIED** and **DISMISSED WITH**

3  **PREJUDICE.**

4        Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure,

5  the parties shall have ten (10) days from service of this Report to file written objections. *See also*

6  Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes

7  of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule

8  72(b), the clerk is directed to set the matter for consideration on **July 11. 2008**, as noted in the

9  caption.

11        Dated this 13 day of June, 2008.

13                                  */S/ J. Kelley Arnold*
                                J. Kelley Arnold

14                                  United States Magistrate Judge

28  REPORT AND RECOMMENDATION- 8